## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**TERON HARRISON,**

     **Petitioner,**

**v.**                           **Case No. 4:21cv119-WS/MAF**

**ATTORNEY GENERAL,**
**State of Florida,**

     **Respondent.**

**_____/**

## REPORT AND RECOMMENDATION

On March 2, 2021, Petitioner Teron Harrison, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On September 28, 2021, Respondent filed an answer, with exhibits.  ECF No. 12.  Petitioner filed a reply.  ECF No. 18.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  For the reasons stated herein, the pleadings and attachments before the Court show Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Procedural Background

By information filed May 1, 2012, in Gadsden County Circuit Court Case 12-00248CFA, the State of Florida charged Petitioner Teron Harrison with three counts, in connection with events that occurred on or about March 17, 2012, involving victim Paul Brown:  (1) burglary of a dwelling with person assaulted, a first degree felony punishable by life, in violation of section 810.02(2)(a), Florida Statutes; (2) aggravated battery with a deadly weapon (pipe), a second degree felony, in violation of sections 784.045(1)(a)2., Florida Statutes; and (3) criminal mischief, causing damages of $200 or less, a second degree misdemeanor, in violation of sections 806.13(1)(b)1., Florida Statutes.   Ex. B1 at 4-5.[1]   Harrison proceeded to a jury trial on October 17, 2012, before Judge Jonathan Sjostrom.  Ex. B6 (trial transcript).  Harrison did not testify.  *Id*. at 111-13.  The jury found him guilty as charged on all three counts.  *Id*. at 177-180; Ex. B1 at 43-45.

On November 8, 2012, the trial judge adjudicated Harrison guilty and sentenced him, as a Prison Releasee Reoffender, to life in prison on Count 1 and fifteen (15) years in prison on Count 2, to run concurrently.  Ex. B1 at 48-58; Ex. B2 at 16-17 (transcript of sentencing hearing).  The judge also

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No.12.

sentenced him to sixty (60) days in jail on Count 3, with credit for 60 days previously served.  Ex. B1 at 48-58; Ex. B2 at 17-18.

Harrison appealed his judgment and sentence to the First District Court of Appeal (First DCA), assigned case number 1D12-5503.  Ex. B1 at 61-65, 74.  Harrison, through counsel, filed an Initial Brief citing <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that no "good faith argument that reversible error occurred in the trial court" could be made, "except for the sentencing errors raised in the Rule 3.800(b)(2) motion."  Ex. B8 at i.  Harrison's counsel also filed a motion requesting that Harrison be allowed to file a pro se brief.  Ex. B9, and the First DCA granted the motion on October 22, 2013, allowing him thirty (30) days to file his initial brief, Ex. B10.  In an opinion issued February 17, 2014, a three-judge panel of First DCA, which included Judge Kent Wetherell, affirmed the convictions and sentences but struck the erroneous items and the judgment, and remanded for correction of those errors.  Ex. B11.  The State filed a motion for rehearing.  Ex. B12.  On August 20, 2014, the First DCA panel granted the motion in part, withdrew the earlier opinion, and substituted a new opinion affirming Harrison's convictions and reversing the judgment and sentence only to correct the sentencing errors.  Ex. B13; <u>Harrison v. State</u>, 146 So. 3d 76 (Fla. 1st DCA 2014).  The mandate issued September 16, 2014.  Ex. B14.

The State sought to invoke the discretionary jurisdiction of the Florida Supreme Court.  Ex. B15.  By order on October 20, 2014, the Florida Supreme Court declined to exercise jurisdiction.  Ex. B16; State v. Harrison, 153 So. 3d 909 (Fla. 2014).

On April 7, 2015, Harrison filed a pro se motion for postconviction relief in the state post-conviction trial court, pursuant to Florida Rule of Criminal Procedure 3.850, raising five (5) claims of ineffective assistance of counsel (IAC).  Ex. C1 at 5-17.  Ultimately, on April 18, 2019, Judge Barbara K. Hobbs held an evidentiary hearing on the motion, during which Harrison was represented by counsel.  *Id*. at 182-219.  In an order rendered August 15, 2019, Judge Hobbs denied post-conviction relief.  *Id*. at 158-61.  Harrison appealed to the First DCA and filed a pro se initial brief in case number 1D19-3338.  Ex. C3.  The State filed an answer brief.  Ex. C4.  On July 27, 2020, the First DCA affirmed the case per curiam without a written opinion.  Ex. C5; Harrison v. State, 300 So. 3d 136 (Fla. 1st DCA 2021) (table).  The mandate issued August 24, 2020. Ex. C6.

As indicated above, on March 2, 2021, Harrison filed his § 2254 petition in this Court.  ECF No. 1.  He raises five grounds, all alleging ineffective assistance of counsel (IAC):

(1) **IAC – Failure to File Motion to Dismiss**: Trial counsel "rendered ineffective assistance by failing to file a pretrial

motion to dismiss both the burglary and battery charges based on Florida so called stand your ground laws." *Id*. at 5.

(2) **IAC – Misadvice Regarding Right to Testify**: Trial counsel "rendered ineffective assistance, misadvising Defendant not to justify [sic] and that his testimony would not be needed to advance his theory of events." *Id*. at 7.

(3) **IAC – Failure to Call Witness to Testify**:  Trial counsel "rendered ineffective assistance by failing to call Teresa Brown who absent Defendant's testimony would have testified to Defendant's theory of the event." *Id*. at 10.

(4) **IAC – Failure to Present Viable Defense**:  Trial counsel "rendered ineffective assistance by failing to present Defendant's affirmative defense of justifiable use of force and argument that Defendant had no intent to commit a crime when he entered the victim[']s home that he did only to protect his girlfriend Ms. Brown." *Id*. at 12.

(5) **IAC – Cumulative**:  Trial counsel's "multiple errors as argued above when considered cumulatively effectively den[ied] Defendant his right to a fair trial and effective assistance of counsel." *Id*. at 14.

On September 28, 2021, Respondent filed an answer, with exhibits.  ECF No. 12.  Petitioner filed a reply.  ECF No. 18.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id*.

For ineffective assistance of counsel (IAC) claims, the United States Supreme Court has adopted a two-part test:

First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

### Ground 1:  IAC – Failure to File Motion to Dismiss

In his first ground, Petitioner Harrison asserts his trial counsel "rendered ineffective assistance by failing to file a pretrial motion to dismiss both the burglary and battery charges based on Florida so called stand your

ground laws."  ECF No. 1 at 5.  In his supporting facts, he states:

> Prior to trial, Defendant explained to his attorney that he had accompanied his girlfriend Cassandra Brown (Hereafter), Ms. Brown took the victim home.  Defendant was to remain on the sidewalk while Ms. Brown conducted her business with the victim inside the house.  As Defendant was waiting on the sidewalk he heard the victim and Ms. Brown screaming and shouting at each other because the Defendant was aware that the victim had become physical and violent with Ms. Brown on previous occasion the Defendant feared for her safety.  Based on the Defendant's concern for Ms. Brown the Defendant approached the victim's front screened door only to look inside and verify that the victim was not physically hurting Ms. Brown.  At this point the victim seen the Defendant and armed himself with a large stick and came after the Defendant.  The victim hit the Defendant with his door knocking the Defendant onto the ground.  Concerned for Ms. Brown's safety, (because the victim was now armed).  The Defendant armed himself with a pipe and again approached the victim's front door where he seen the victim threatening Ms. Brown with the stick.  Defendant entered the home to prevent the victim (Home Owner) from battering Ms. Brown with the stick.  At this point an altercation ensued and the victim was struck in the waist by the pipe.  The victim then stated he would call the police causing the Defendant to flee immediately.  Defendant asserts that had his trial attorney based on Defendant's statement filed a motion to dismiss, asserting immunity from prosecution citing Florida's justifiable use of force laws (Florida so-called stand your ground laws) arguing that Defendant only entered the residence and fought with the victim to prevent the victim (home owner) from committing a forcible felony (Aggravated battery) upon Ms. Brown.  That Defendant did not enter the home with intent to commit a crime, after a hearing on the motion the court would have been obligated to grant a dismissal, precluding prosecution and resulting in Defendant's release from confinement.  Absent trial counsel's error here there exists a reasonable probability that the outcome of the proceeding would have been different in violation of Defendant's Sixth and Fourteenth U.S. Constitutional Rights and Corresponding State Constitutional Rights.  Upon filing the above mentioned claim, the trial court granted an

evidentiary hearing.  At the evidentiary hearing the court did not address the instant claim, although Petitioner's counsel made it clear that he was not waving the instant claim in it's order denying the Petitioner's motion.   The trial [sic] argued that Petitioner withdrew this issue.  The record demonstrate the contrary. . . .

ECF No. 1 at 5-6.

Respondent acknowledges that Harrison raised this claim in the first ground of his pro se Rule 3.850 motion.  Ex. C1 at 7-8; *see* ECF No. 12 at 7.  Respondent asserts, however, that Harrison did not introduce any evidence in support of the claim at the evidentiary hearing, "let alone fairly present any federal constitutional grounds for relief," or in his appeal from the denial of postconviction relief.  ECF No. 12 at 7.  Respondent asserts that because Harrison thus abandoned this claim, it is unexhausted and procedurally defaulted.  *Id*. at 8-9.  *See* O'Sullivan, 526 U.S. at 845.  *See, e.g.*, Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (explaining cause and prejudice, and correction of fundamental miscarriage of justice); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of just exception is applicable.").

In its order ruling on the motion, the state post-conviction court found

Harrison had withdrawn all except one IAC claim:

> In his motion, the Defendant raised several issues regarding the effectiveness of his attorney at trial.  At the hearing on the motion, the Defendant withdrew all issues other than the issue labeled "Ground One-D" which is entitled:  Ineffective Assistance of Counsel Failure to Present Viable Defense.  At the hearing, counsel for Defendant explained that this issue actually addressed trial counsel's failure to request a jury instruction for self-defense/defense of others.

Ex. C1 at 158.  In his appeal from the denial of post-conviction relief, Harrison's only point asserted the court erred in denying his Rule 3.850 motion without disposing of all issues raised as the court ruled on only one issue, rendering the order nonfinal and nonappealable.  Ex. C3.  Harrison requested the First DCA dismiss the appeal or reverse the order for the trial court to rule on the remaining issues.  *Id*. at 4.

In its answer brief, the State argued the order denying relief should be affirmed because the post-conviction trial court properly denied the claim that trial counsel was ineffective for failing to request a jury instruction on defense of others.  Ex. C4 at 6.  In a footnote, counsel for the State pointed out that Harrison had raised four grounds in his Rule 3.850 motion and, although each ground was set for hearing, counsel stated he was focusing only on Ground 1D.  *Id*. at 8 n.1.  The State indicated the court took "counsel's response as a waiver of the other grounds."  *Id*.; *see* Ex. C1 at 158.  The State concluded that because the court gave the opportunity for the other

grounds to be addressed and no evidence was presented on those grounds, those other grounds were abandoned. Ex. C4 at 8 n.1; *see* Wickham v. State, 124 So. 3d 841, 860 (Fla. 2013) ("Wickham raised this claim in his postconviction motion as part of claim seven and was granted an evidentiary hearing to address his ineffective assistance of counsel claims. However, Wickham failed to pursue the claim; therefore, he abandoned it."); Booker v. State, 969 So. 2d 186, 194-95 (Fla. 2007) ("When a defendant fails to pursue an issue during proceedings before the trial court, and then attempts to present that issue on appeal, this Court deems the claim to have been abandoned or waived. . . . The record reflects that although Booker attempted to raise these claims in his initial postconviction motion, they were insufficiently pled. Additionally during the first . . . hearing, Booker did not raise or argue these issues, nor did he request permission to amend the portions of Claim I that addressed these issues. Moreover, Booker failed to reassert these claims in his amendment to Claim I. We conclude that Booker completely failed to pursue these claims in the proceedings before the [post-conviction] trial court, and, therefore, they have been abandoned." (footnote omitted)).

Harrison did not file a reply brief in the appeal. As set forth above, on July 27, 2020, the First DCA affirmed the case per curiam without a written

opinion.  Ex. C5; Harrison v. State, 300 So. 3d 136 (Fla. 1st DCA 2021) (table).  Harrison did not seek rehearing.  The mandate issued August 24, 2020.  Ex. C6.  This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  See Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  See Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

In particular, the state record supports the factual findings made by the postconviction court regarding the withdrawal of all but one of the IAC claims.  At the start of the evidentiary hearing, the following transpired on the record:

> THE COURT:  Okay.  So the motion, I don't have.  Can you help me and tell me which grounds were – okay.  (Brief pause.) Ground 1 was failed to file a motion to dismiss.  Tell me which grounds were allowed for hearing.
>
> MR. ALVAREZ [Harrison's attorney]:  Judge, I believe everything

was set for hearing.

THE COURT:  Okay.  Because it's pro se, okay.  All right then. Did you adopt any of the grounds so I'll know which one we're moving – talking about today?

MR. ALVAREZ:  So I don't want to waive any of the grounds but the primary focus of the entire thing is going to be on Ground 1D. And Ground 1D, while, it's entitled ineffective assistance of counsel, failure to present a viable defense, the content of it, I believe, makes clear that the defendant is asserting that Mr. Bruhn was ineffective by failing to present the affirmative defense of justifiable use of force by not arguing defendant had no intent to commit a crime when he entered the victim's home, and that he did so only to protect his girlfriend.

Ex. C1 at 185.  Notwithstanding his statement to the judge that he did not "want to waive any of the grounds," counsel did not present any argument, evidence, or testimony regarding any of the other grounds, nor did he even mention any of the other grounds during the evidentiary hearing or in the proposed order he drafted for the judge.  *See id*. at 184-218 (transcript of evidentiary hearing); 164-73 (proposed order granting post-conviction relief).

Even assuming this ground was not procedurally defaulted or abandoned in the state court, Harrison has not shown entitlement to relief. Nothing indicates that if defense counsel had filed a motion to dismiss based the "Stand Your Ground" law, section 776.013, Florida Statutes, the trial court would have granted the motion.  At the time of the offense in this case, March 17, 2012, section 776.013 provided:

(1) A person is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or great bodily harm to another if:

(a)  The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully or forcibly entered, a dwelling, residence, or occupied vehicle, or if that person had removed or was attempting to remove another against that person's will from the dwelling, residence, or occupied vehicle; and

(b)  The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

(2) The presumption set forth in subsection (1) <u>does not apply if</u>:

(a) <u>The person against whom the defensive force is used has the right to be in or is a lawful resident of the dwelling, residence, or vehicle, such as an owner, lessee, or titleholder</u>, and there is not an injunction for protection from domestic violence or a written pretrial supervision order of no contact against that person; or

(b) The person or persons sought to be removed is a child or grandchild, or is otherwise in the lawful custody or under the lawful guardianship of, the person against whom defense force is used; or

(c) <u>The person who uses defensive force is engaged in an unlawful activity</u> or is using the dwelling, residence, or occupied vehicle to further an unlawful activity; or

(d)  The person against whom the defensive force is used is a law enforcement officer . . . .

(3) A person <u>who is not engaged in an unlawful activity</u> and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her

ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or to prevent the commission of a forcible felony.

(4)  <u>A person who unlawfully and by force enters or attempts to enter a person's dwelling, residence, or occupied vehicle is presumed to be doing so with the intent to commit an unlawful act involving force or violence</u>.

(5)  As used in this section, the term:

    (a)  <u>"Dwelling" means a building or conveyance of any kind, including any attached porch</u>, whether the building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it, including a tent, and is designed to be occupied by people lodging therein at night.

    (b)  "Residence" means a dwelling in which a person resides either temporarily or permanently or is visiting as an invited guest.

    . . . .

§ 776.013, Fla. Stat. (2011) (underline emphasis added). *See, e.g.*, <u>Peterson v. State</u>, 983 So. 2d 27 (Fla. 1st DCA 2008) (explaining "Stand Your Ground" law, enacted in 2005, "provides that a person who uses force as permitted in section 776.013 is justified in using such force and is immune from criminal prosecution as well as civil action for the use of such force").  Under the law applicable at the time, "when such a claim is raised, the trial court must determine whether the defendant has shown by a preponderance of the evidence that the immunity attaches."  <u>Peterson</u>, 983 So. 2d at 29; *see*

Bretherick v. State, 170 So. 3d 766, 775 (Fla. 2015) (holding that "the defendant bears the burden of proof, by a preponderance of the evidence, to demonstrate entitlement to Stand Your Ground immunity at the pretrial evidentiary hearing"), *superseded by statute as stated in* Sparks v. State, 299 So. 3d 1 (Fla. 4th DCA 2020); Nieves v. Sec'y, Dep't of Corr., 853 F. App'x 368, 373 (11th Cir. 2021) ("At the time of Nieves's trial in 2013, when a defendant raised a question of immunity from criminal prosecution under Florida's stand-your-ground law, the defendant bore the burden of providing at a pretrial evidentiary hearing entitlement to immunity under the statute by a preponderance of the evidence."). *Cf., e.g.,* Boston v. State, 326 So. 3d 673, 675 (Fla. 2021) ("In light of the 2017 amendment [to the Stand Your Ground Law], a defendant is no longer required to prove that he or she acted in self-defense by a preponderance of the evidence at an immunity hearing; instead, a defendant need only make a prima facie showing at that point. To defeat the claim of immunity, the State must prove by clear and convincing evidence that the defendant did not act in self-defense.").

As also set forth in detail in the analysis of Ground 4, *infra*, the victim, Paul Brown, testified at the trial that he lived in his home with Teresa Brown who had a sister Cassandra Brown Murphy, who would visit the home occasionally.  Ex. B6 at 33-35.  Mr. Brown testified that Harrison would visit

Cassandra at Mr. Brown's house; however, several months before the incident, Mr. Brown had advised Harrison he was no longer welcome at his house because of verbal confrontations and "some physical confrontations" between Cassandra and Harrison. *Id*. at 35-36. Mr. Brown testified that, on the day of the incident, he was in his backyard working on a piece of lawn mower equipment, when he realized someone was in the house. *Id*. at 37-38; 49. He walked in and found Cassandra and her children in the home; Cassandra told him that "she had custody of the children for the weekend, and she was there visiting her sister, Teresa." *Id*. at 38. Mr. Brown then heard Harrison's voice from outside the house, asking for Cassandra to bring him a tape. *Id*. at 38-39. Mr. Brown testified he asked Cassandra if she brought Harrison to the house and Cassandra said "no," but one of her children said "yes." *Id*. at 38-39. Mr. Brown went to the front screen door, he saw Harrison "standing off the curb into the street, in front of the house," a distance of about 18 feet, and he told Harrison to leave the premises. *Id*. at 39-40. Mr. Brown testified Harrison did not leave and instead "became vulgar in his speech towards me." *Id*. at 40-41. Mr. Brown testified:

> I matched him, and told him to get the H away. He refused to do so, so I began arguing at Cassandra Murphy Brown for lying to me and having him there. He kept repeating about the tape, and had the audacity to leave the curb and come up on my porch at my screen door.

*Id*. at 41.  Mr. Brown further testified:

> Q  So he comes up, then, on your property at the door, and you are at the door at this time?
>
> A  I'm inside.  I'm at the screen door, but inside the threshold of my door.
>
> Q  And when he comes up on your porch, what do you do?
>
> A  There's a stick, about two feet long, something like a handle from a shovel about an inch and a half in diameter, about two feet long, that I keep to the right of the door, something to serve as a baseball bat to go upside somebody's head, you know what I'm saying?  So I grab it, and I hold it in front of his face and tell him to get off of my porch.  He refused to do so, so with the stick in my hand, I pushed the screen door with the stick in my hand.  It made contact with him.  He cops an attitude, jumps off my porch, goes into my flower bed to the left side of the door, grabs the cotton picking iron pipe I had propping a tree, called an angel trumpet.
>
> He pulls it up out of the ground.  I'm trying to let the jurors be right there.  He pulls it up out of the ground.  He enters back onto the porch, grabs the cotton picking screen door, opens it.  Cassandra Murphy Brown is to my right shoulder, and behind me.  He forces himself into the living room, with the iron pipe in his hand, and he commences to swing at me with that sucker.
>
> Q  When he comes in with this pipe, now, does he actually then cross the threshold?
>
> A  He has crossed the threshold of my living room door leading to the porch.
>
> Q  At that point in time, do you still have the –
>
> A  Stick in my hands.
>
> Q  Stick in your hand?  When he swings at you, can you describe

for us how you did that?

A  When Mr. Harrison drew back to hit me with the stick – with the pipe, I take the stick because the pipe is coming now, the pipe is coming, I block the pipe with the stick.  The pipe hits the stick and comes down to my wrist and it hits my right wrist.

*Id*. at 41-42.  As Mr. Brown grabbed the landline phone to call the police, Harrison grabbed the end of the telephone cord line and "snatche[d] it to keep [Mr. Brown] from using the phone."  *Id*. at 42-43.  Mr. Brown testified the phone cord broke away from the handset, "[t]he phone tears apart, comes apart and hits the floor."  *Id*. at 43.  Harrison went back outside and "fled the scene," and Mr. Brown used his cell phone to call the police.  *Id*. at 43-44.  Mr. Brown also testified that, at some point during the incident, Harrison had picked up an ashtray from the front porch and threw it at him; it did not hit him but it did make "contact with the side of the door frame of the house."  *Id*. at 45.

Officer Rebecca Reis, uniformed patrol officer with the Havana Police Department, testified at the trial that she responded to the call concerning Mr. Brown's residence.  *Id*. at 62-63.  When she arrived, Harrison "had already left the area" and "Mr. Brown was verbally – was very shaken and visibly shaking, and distressed."  *Id*. at 63.  With another officer, she took pictures of the scene, including "where the front door was damaged, the door jam[b] was damaged" and "[t]he telephone was ripped out of the wall and

thrown in the yard." *Id*. at 63-64.  She testified:  "Mr. Brown's right hand had a little bit of swelling and scratches on it as well. . . . It was right in this area of his hand, where it appeared he had been struck by something or had hit it on something.  Something had happened to cause some type of injury to his hand." *Id*. at 64.  They took the metal pipe into custody, it had been "located in the front yard . . . several feet from the front porch." *Id*. at 65.  She testified the pipe "had a lot of sand packed in it," and they "had to bang out the sand before we took it into custody." *Id*. at 66.  She testified the door had a dent "like somebody forced it open." *Id*. at 68.  She also testified that "[t]here was a broken ashtray, a large ashtray, broken into several pieces on the floor, on the chair" and "[c]igarette butts were everywhere from somebody throwing it." *Id*. at 69.  She testified "there was some sand as well from the pipe when it was in the house, and you can see the sand and ashes and cigarette butts all over." *Id*.  She testified that all this was "[i]nside the residence." *Id*. at 70.

Based on the foregoing, given the exception in the statute quoted above, for when the victim (Mr. Brown) is a lawful resident of the dwelling and that dwelling has been unlawfully and forcibly entered, any effort by Harrison to invoke the protections of the statute would have been rejected. *See* § 776.03(2)(a), (2)(c), (3)-(4), Fla. Stat. (2011).  As set forth in greater detail in the analysis of Ground 2, *infra*, Harrison's only defense witness,

Cassandra Brown Murphy, did not testify that that the victim had threatened her and, further, she testified that Harrison did not enter the victim's house. *See* Ex. B6 at 101-03.  Murphy testified that Harrison remained on the front porch and, after the victim shoved a stick at him, Harrison left.  *Id*. at 100, 102, 106-08.  At best, Harrison's argument that the trial court would have granted a motion to dismiss based on the statute appears speculative and such is insufficient to undermine the confidence in the outcome of the trial. *See generally, e.g*., Harrington, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.); Harris v. Crosby, 151 F. App'x 736, 738 (11th Cir. 2005) ("[S]peculation is insufficient to undermine our confidence in the outcome of his trial.").  *See also, e.g*., Mederos v. State, 102 So. 3d 7, 11 (Fla. 1st DCA 2012) (denying petition for writ of probation challenging trial court's denial of Stand Your Ground motion to dismiss: "[T]he testimony below 'contradicts wildly.' While there was testimony supporting petitioner's argument that he was acting in defense of Ribas and himself and that he was defending against a forcible felony, there was also competent, substantial evidence that he was not acting in self-defense or in defense of a forcible felony at the time of the stabbing."); Nieves, 853 F. App'x at 375 ("[I]n light of the limited and ambiguous evidence concerning self-defense in this case, the state court's determination – that Nieves could

not have met his burden of establishing immunity under the statute, and, therefore, his counsel was not ineffective for failing to pursue an evidentiary hearing on the stand-your-ground motion – was not contrary to, or an unreasonable application of Strickland," nor "was it based on an unreasonable determination of the facts."). Accordingly, defense counsel did not perform deficiently. This ground should be denied.

## Ground 2: IAC – Consequences of Not Testifying

In his second ground, Petitioner Harrison asserts his trial counsel "rendered ineffective assistance, misadvising Defendant not to justify [sic] and that his testimony would not be needed to advance his theory of events." ECF No. 1 at 7. In his supporting facts, he states:

> Trial Counsel advised the Defendant that he didn't need to testify for his theory of the incident to be argued to the jury. Counsel advised that through cross examination of the victim's previous acts of violence towards Ms. Brown, would establish that the defendant only approached the victim's door to ensure Ms. Brown's safety after hearing the yelling and screaming. The Defendant was knocked off the porch and only re-engaged with the victim and entered the home (while armed), because the victim was armed with a stick threatening to strike Ms. Brown. The Defendant had no intent to commit a crime while entering the home, the defendant acted to defend Ms. Brown. Counsel ensued [sic] the Defendant that the facts would be presented to the jury and the Defendant needs not to testify. At the close of the State's case, Defendant inquired of counsel concerning his failure to present defendant's theory of the case. Counsel advised that he would get it all [in during] closing argument. Again, this did not occur. On fact at no point did the jury lean [sic] Defendant's version of the events. The case went to the jury

and Defendant was found guilty as charged.  Here Defendant waived his Constitutional Right to testify and present his side of the story.  Based on Counsel's assurance that he would present defendant's theory of the case through the evidence.

Counsel's failure here renders his waiver to testify involuntary.  Additionally, Defendant asserts that had trial counsel correctly advised the Defendant that his version of the events would not be presented to the jury and the Defendant would not have forgone his rights to testify but elected to do so and testify as stated above which Defendant's testimony to the jury would have learned that Defendant was trying to protect Ms. Brown and under Florida's Justifiable use of force laws he was not guilty of Burglary Assault or Aggravated Battery.  Absent trial counsel's error there exist[s] a reasonable probability that the outcome of Defendant's trial would have been different and [he] had not entered the victim's home with the intent to commit any crime but to protect his girlfriend Ms. Brown.  In violation of Defendant's Sixth and Fourteenth U.S. And Corresponding Constitutional Rights.

Misadvice resulting involuntary rejection of right to testify.

Upon filing the above mentioned claim, the trial court granted an evidentiary hearing.  At the evidentiary hearing the Court did not address the instant claim, although Petitioner's counsel made it clear that he was not wavering the instant claim. In its order denying the Petitioner's motion, the trial court argued that Petitioner withdrew this issue.  The record demonstrates the contrasty [sic].

ECF No. 1 at 7-8.

Respondent acknowledges that Harrison raised this claim in the second claim (Ground 1B) of his pro se Rule 3.850 motion.  Ex. C1 at 9-10; *see* ECF No. 12 at 9.  As with Ground 1, *supra*, Respondent asserts that Harrison did not introduce any evidence in support of the claim at the

evidentiary hearing, "let alone furnish the postconviction court [or the First DCA] with any federal constitutional grounds for relief."  ECF No. 12 at 9.  Respondent asserts that because Harrison thus abandoned this claim, it is unexhausted and procedurally defaulted.  *Id*. at 9-10.

Indeed, as with Ground 1, *supra*, the state record supports the factual findings made by the post-conviction court, affirmed on appeal, regarding the withdrawal of all but one of the claims.  Even if this claim was not procedurally defaulted or abandoned, Harrison has not shown entitlement to relief.

The trial transcript contains the following:

THE COURT:  Mr. Bruhn, have you discussed with Mr. Harrison his right to testify and his right to remain silent?

MR. BRUHN [defense counsel]:  Yes, Judge.

THE COURT:  So Mr. Harrison, you have the absolute right to take the stand and tell your side of the story in your own words, if that's what you want to do.  You also have the absolute right to remain silent.  I have no power to force you to testify if you don't want to testify.  It's totally up to [you] whether you testify or not.

I can try to answer any questions that you might want to ask me about it.  If there's questions you want to ask Mr. Bruhn you can have time to talk it over with him.  But ultimately it's your decision. So Mr. Harrison, do you understand that you can testify or not, as you decide?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you discussed it with Mr. Bruhn?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you had enough time?  Has he answered all your questions?

THE DEFENDANT:  Yes, sir.

THE COURT:  Are there any questions you want to ask me about it?

THE DEFENDANT:  No, sir.

THE COURT:  Have you come to a decision about whether or not to testify?

THE DEFENDANT:  Yes, sir.

THE COURT:  What have you decided?

THE DEFENDANT:  I'm saying no.

THE COURT:  You're not going to testify?  You're going to exercise your right to remain silent?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  So then I will instruct the jury once again that your silence cannot be[] used against you as evidence of guilt.  All right.

Ex. B6 at 111-33.  Harrison thus indicated he had discussed this with his attorney, he had enough time, his attorney answered all his questions, he understood he could testify, and he decided not to testify.  "Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

Petitioner Harrison here asserts counsel "misadvised" him not to testify, otherwise he would have testified at trial to his "version of the events":

> Defendant only approached the victim's door to ensure Ms. Brown's safety after hearing the yelling and screaming. The Defendant was knocked off the porch and only re-engaged with the victim and entered the home (while armed), because the victim was armed with a stick threatening to strike Ms. Brown. The Defendant had no intent to commit a crime while entering the home, the defendant acted to defend Ms. Brown.

ECF No. 1 at 7-8; *see* Ex. C1 at 8-10. These assertions appear inconsistent with his statements in court, quoted above, that he had discussed the issue with his attorney, had enough time to discuss the issue, and it was his decision not to testify. The trial court questioned Harrison, as set forth above, and Harrison unequivocally waived his right to testify.

Further, the court's colloquy does not reflect whether defense counsel advised Harrison to testify or not to testify. Nothing indicates counsel stopped him from testifying; to the contrary, Harrison indicated to the court that it was his decision not to testify. *See, e.g.*, McGriff v. Dep't of Corr., 338 F.3d 1231, 1237 (11th Cir. 2003) (delineating "the duties of a trial counsel with respect to a defendant's right to testify" as "[c]ounsel must advise the defendant (1) of his right to testify or not to testify; (2) of the strategic implications of each choice; and (3) that it is ultimately for the defendant himself to decide whether to testify").

Moreover, if Harrison had taken the stand and testified as he indicates he would have, such testimony would have conflicted with that of the sole defense witness, Cassandra Brown Murphy.  *See* Ex. B6 at 98-111.  In particular, as Respondent indicates, Murphy did not testify that the victim had threatened her and, further, she testified that Harrison did not enter the victim's house.  *See id*. at 101-03; ECF No. 12 at 29.  Murphy testified that Harrison remained on the front porch.  Ex. B6 at 102.  On direct, she testified:

> Q  Okay.  And Mr. Brown [the victim] mentioned that there was an altercation.  Did you see anything where he had a stick or anything?
>
> A  No, he didn't have no stick.  Pretty much – I don't know.  The only thing I might have saw Paul [Brown] had the stick just jerking.  Turn around, he standing outside the porch, whatever.  That's pretty much all I saw that night.
>
> Q  So did you see – you were in the house that night?
>
> A  Uh-huh.  I was standing beside him, behind him.

*Id*. at 100.  On cross, Murphy testified the confrontation between the victim and Harrison was "just stupid."  *Id*. at 106, 109-10.  She explained "[i]t happened very quickly" and "[w]ithin a second," and then she further testified:

> Q  What happened in a second?  That's a little confusing from your testimony?
>
> A  Pretty much Paul [the victim] is walking outside and I'm standing behind him.  They just shoving.  He had a broom stick, I guess, and was just shoving at Teron [Harrison], shoving him with the broom.  It was just stupid.  Didn't make no sense.

Q  And did Mr. Harrison – at that point in time when Mr. Brown goes out with the stick, does Mr. Harrison leave?  Does he get off Mr. Brown's property?

A  That's pretty much what I saw, yeah.

Q  So you're saying, and it's your testimony that Mr. Brown walks out with this stick and says get off my property, and Mr. Harrison leaves?

A  No, there was shoving with the sick, and he left afterwards.

Q  When you say struggling with the stick, what does that entail?

A  When [sic] was doing this right here (indicating), I guess he was pushing it back.

Q  They're both pushing like this on the stick?

A  Yeah, uh-huh.

Q  Does Mr. Harrison grab any type of object?

A  No, I hadn't seen anything.

Q  Other than the stick in Brown had [sic]?

A  No.

Q  So it's your testimony that they with [sic] go out there and Mr. Brown is kind of like poking at him with the stick, saying get off my property?

A  Yep.

Q  Mr. Harrison grabs a hold of it?

A  Pretty much.  I mean, I'm behind.  It's dark, so if he doing this–

Q  Anything else occur other than the two of them –

A  No.

Q  Does Mr. Harrison let go of the stick and then leave?

A  Yes.

*Id*. at 106-08.

In addition, as Respondent points out, the record reflects that if Harrison had decided to testify, he would have been subject to questioning, at least impeachment, about his prior criminal record that included eight felonies.  Ex. B1 at 59; ECF No. 12 at 30.  If Harrison had not answered truthfully, then the prosecution could have introduced that the felonies included armed robbery, resisting arrest with violence, and battery on a law enforcement officer, reflecting a violent nature and discrediting his defense. *See* Ex. B1 at 59; B2 at 14.  *See generally* <u>Atkins v. Singletary</u>, 965 F.2d 952, 961 n.7 (11th Cir. 1992) (explaining defendant who testifies risks jury will disbelieve his testimony and conclude opposite of his testimony is true).

Importantly, in closing, defense counsel appears to have made the most of what he had.  Ex. B6 at 162-.  Defense counsel relied on Murphy's testimony to argue that Harrison did not enter the house and he only went to the porch when the victim started yelling at Murphy, "to make sure she didn't get hit, or anything happen to her."  *Id*. at 163; *see id*. at 164 ("If he didn't

enter that porch with the intent to commit a burglary, it's not burglary. He was there to see [what] was going on with her."). He also pointed out the inconsistencies between the victim's testimony and that of Murphy. *Id*. at 166-68.

Based on the foregoing, Harrison did not exhaust this ground and it is procedurally defaulted. Even if considered, this ground should be denied.

### Ground 3:  IAC – Failure to Call Witness to Testify

In his third ground, Petitioner Harrison asserts his trial counsel "rendered ineffective assistance by failing to call Teresa Brown who absent Defendant's testimony would have testified to Defendant's theory of the event." ECF No. 1 at 10. He further states, as supporting facts:

> Prior to trial Defendant advise his attorney that Teresa Brown, Ms. [Cassandra] Brown [Murphy]'s sister was actually in the house when the incident occurred and witnessed the entire event. Teresa Brown was available to testify on the day of Defendant's trial and would have testified that upon Ms. Brown entering the home that the victim became argumentative with Ms. Brown and became belligerent. Teresa Brown would have testified that when the Defendant first came to peer into the front door the victim armed himself with a stick and knocked the defendant off the porch then the victim turned his attention with a stick to Ms. Brown threatening to strike her. At this point the Defendant now armed with a pipe confronted the victim in a effort to protect Ms. Brown from being hit with a stick. Defendant avers that had counsel presented this testimony combined with argument from counsel and jury instruction on Florida Justifiable Use of force law. The jury would have had a viable statutory exception an affirmative defense to defendant's action. The jury would have found that the defendant's actions were justifiable to

prevent a felony (Aggravated Battery) from occurring against Ms. Brown and that the Defendant had no intent to commit a crime inside the home resulting in an acquittal. Absent trial counsel's error here there exists a reasonable probability that the outcome of defendant['|s trial would have been different. In violation of Defendant's Sixth and Fourteenth U.S. and corresponding State Constitutional Rights.

Upon filing the above mentioned claim, the Trial Court granted an evidentiary hearing. At the evidentiary [hearing,] the Court did not address the instant claim although Petitioner's Counsel made it clear that he was not wavering the instant claim. In a[n] order denying the Petitioner's motion, the trial [judge] argued that Petitioner withdrew this issue. The record demonstrates that contrary.

ECF No. 1 at 10-11.

Respondent acknowledges that Harrison raised this claim in the third ground (Ground 1C) of his pro se Rule 3.850 motion. Ex. C1 at 11-12; *see* ECF No. 12 at 11. As with Grounds 1 and 2, *supra*, Respondent asserts that Harrison did not introduce any evidence in support of the claim at the evidentiary hearing, "let alone furnish the postconviction court [or the First DCA] with any federal constitutional grounds for relief." ECF No. 12 at 11. Respondent asserts that because Harrison thus abandoned this claim, it is unexhausted and procedurally defaulted. *Id*.

Indeed, as with Grounds 1 and 2, *supra*, the state record supports the factual findings made by the post-conviction court, affirmed on appeal, regarding the withdrawal of all but one of the IAC claims. Even assuming

this ground was not procedurally defaulted or abandoned in the state court, however, Harrison has not shown entitlement to relief.

In particular, as Respondent explains, the record refutes Harrison's assertion that Teresa Brown was in the house when the incident occurred. Paul Brown and Cassandra Brown Murphy both testified at trial that Teresa Brown had already left the house before Murphy arrived.  Ex. B6 at 38 (Paul Brown); 105-06 (Cassandra Brown Murphy).  Murphy testified that Teresa Brown "might have been up the road" when Paul Brown called 911 and Teresa "came in within three minutes."  *Id*. at 108.  In addition, Officer Rebecca Reis testified that when she talked to Teresa Brown, Teresa told her that she had been "walking down the road" and "heard a bunch of commotion from the residence," but "[s]he didn't see anything as she approached the house."  *Id*. at 81.  Reis also testified that Teresa Brown indicates she witnessed only what occurred "afterwards" and was not present "[f]or the bulk of this."  *Id*.

Based on the foregoing, Harrison did not exhaust this ground and it is procedurally defaulted.  Even if considered, Harrison's trial counsel was not ineffective for not calling Teresa Brown as a witness.  *See generally, e.g.,* Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006) (explaining burden is "heavy where the petitioner alleges ineffective assistance in failing

to call a witness because 'often allegations of what a witness would have testified to are largely speculative'" (quoting United States v. Guerra, 628 F.2d 410, 413 (5th Cir. 1980)); *accord* McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1365 (11th Cir. 2021); *see also, e.g.*, Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) ("Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.").  This ground should be denied.

### Ground 4:  IAC – Failure to Present Viable Defense and JOA

In his fourth ground, Petitioner Harrison asserts his trial counsel "rendered ineffective assistance by failing to present Defendant's affirmative defense of justifiable use of force and argument that Defendant had no intent to commit a crime when he entered the victim[']s home that he did only to protect his girlfriend Ms. Brown."  ECF No. 1 at 12.  Harrison states, as supporting facts:

> Defendant made trial counsel aware that he only approached the victim's porch initially to ensure Ms. Brown safely, that the victim armed himself with a large stick and knocked the Defendant out.  The Defendant only entered the home armed with a pipe to protect Ms. Brown and had no intent to commit a crime inside the home.  Absent presenting this defense, the jury was left with only the prosecution's view of the case which presented the defendant as an armed burglar including the credibility of

defendant's testimony trial counsel had evidence at his disposal to present this defense . . . . Here trial counsel's failure to present a via[ble] self defense, defense allowed the prosecutor to present a virtually under challenged case which presented the defendant as a[n] armed burglar an[d] had counsel presented, defendant's defense. The jury would have found that Defendant's use of force was justifiable as Defendant[] was only acting in Ms. Brown[']s defense and that he had no intent to commit a crime inside the home resulting in an acquittal of all charges. Alternatively, trial counsel would have moved for a judgment of acquittal, arguing that the state failed to repute Defendants theory of justifiable use of force having presented a valid basis for engaging the victim with a pipe. The trial court would have been obligated to grant the JOA motion resulting in Defendant's release from confinement. Absent trial counsel's error, here there exists a reasonable probability that the outcome of the trial would have been different. In violation of Defendant's Sixth and Fourteenth U.S. Constitutional Right and corresponding State Constitutional Rights.

*Id*. at 13.

Respondent acknowledges that Harrison raised these arguments in the fourth ground (Ground 1D) of his pro se Rule 3.850 motion. Ex. C1 at 13-14; *see* ECF No. 12 at 12. As with Grounds 1, 2, and 3, *supra*, Respondent asserts that Harrison did not address this claim in his appeal from the denial of post-conviction relief, "let alone furnish the appellate court with any federal constitutional grounds in support of the claim," but instead Harrison argued only that the post-conviction court did not address all his claims. ECF No. 12 at 12. Respondent asserts this claim is thus unexhausted and procedurally defaulted. *Id*. at 12-13.

On the merits, as Respondent indicates, Harrison's appointed counsel clarified at the evidentiary hearing that this ground alleged trial counsel "was ineffective by failing to present the affirmative defense of justifiable use of force by not arguing defendant had no intent to commit a crime when he entered the victim's home, and that he did so only to protect his girlfriend." Ex. C1 at 185; *see* ECF No. 12 at 33. This is the sole claim the state post-conviction trial court ruled on, having determined, as explained above, that Harrison withdrew the remaining claims.

In denying this claim, the state post-conviction court made the following findings of fact:

> In his motion, the Defendant raised several issues regarding the effectiveness of his attorney at trial. At the hearing on the motion, the Defendant withdrew all issues other than the issue labeled "Ground One-D" which is entitled: Ineffective Assistance of Counsel Failure to Present Viable Defense. At the hearing, counsel for Defendant explained that this issue actually addressed trial counsel's failure to request a jury instruction for self-defense/defense of others.

> In order to determine the validity of the claim, the entire record of the trial proceedings had to be reviewed. At the trial, the victim, Paul Brown testified. [Ex. B6 at 32-60.] Mr. Brown explained that he lived in his home with Teresa Brown who had a sister (Cynthia [sic] Brown Murphy, hereinafter referred to as Ms. Murphy) who would visit the home occasionally. [Ex. B6 at 33-35.] The Defendant would visit Ms. Murphy at Mr. Brown's house. [Ex. B6 at 35.] Several months before the incident, Mr. Brown had advised the Defendant he was no longer welcome in the home. T: 36. [Ex. B6 at 36.] On the day of the incident, March 17th, 2012, the victim said he was in his backyard when

he realized someone was in the house. [Ex. B6 at 37-38; 49.] The victim walked in and found Ms. Murphy and her children in the home. [Ex. B6 at 38.] The [sic] Ms. Murphy told the victim that she was there to see her sister, Ms. Brown. [Ex. B6 at 38.] At that point, the victim heard the Defendant's voice calling for Ms. Murphy to bring him something. T: 38-39. [Ex. B6 at 38-39.] According to the victim, although Ms. Murphy denied bringing the Defendant to the house, one of the children said that the Defendant walked to the house with them. T: 39. [Ex. B6 at 39.] The victim went to the front door. [Ex. B6 at 39.] The victim again told the Defendant to leave and he refused. [Ex. B6 at 39-41.] The victim said that he "argued" with Ms. Murphy for lying to him about bringing the Defendant, but he did not threaten her. T: 51. [Ex. B6 at 41; 50-51.] On cross examination, the victim said that he spoke to the sister in a loud voice indicating that he was upset. T: 50. The Defendant then came up onto the porch of the victim's house. [Ex. B6 at 41.] The victim grabbed a stick and told the Defendant to get off his porch. [Ex. B6 at 41.] The Defendant refused to do so. [Ex. B6 at 41.] The victim opened the screen door to walk out onto the porch and the door made contact with the Defendant. [Ex. B6 at 41-42.] The Defendant fell and then grabbed an iron pole sticking in the ground and came back on to the porch and into the victim's house. T: 93. [Ex. B6 at 41-42, 46.] Defense counsel tried to ask the victim if the Defendant approached the house because the victim was yelling at Ms. Murphy and the victim said there was no threat to Ms. Murphy. [Ex. B6 at 51.]

The investigating officer testified that Ms. Murphy did not make any complaint that the victim assaulted her. T: 74. [Ex. B6 at 72-73, 76, 83.] The defense called Ms. Murphy as a witness. [Ex. B6 at 98-111.] She testified that the Defendant never had a weapon of any kind and that the Defendant never came into the house. T: 101, 107. [Ex. B6 at 101-03; 106-08.] She never testified that she was threatened by the victim. [*See* Ex. B6 at 98-111.] In fact Ms. Murphy testified when questioned by law enforcement she gave no statement because she did not want anything to do with the incident because she believed the altercation to be stupid. T: 109-110. [Ex. B6 at 108-10.]

> Based upon the testimony presented, the trial court read the jury instruction for justifiable use of deadly and non-deadly force. T: 137. [Ex. B6 at 137.] The jury returned a verdict of guilty as charged. [Ex. B6 at 178-80.]

Ex. C1 at 158-60. The court then set forth the <u>Strickland</u> standard and found

Harrison had not satisfied the standard:

> In this case, the Defendant has failed to meet the requirements of <u>Strickland</u>. There was no evidence to support the giving of a jury instruction other than the instructions that were given. The victim in this case admittedly yelled at Ms. Murphy but testified that he did not threaten her. More importantly, Ms. Murphy, who was called by the defense, testified that when questioned by law enforcement she refused to give a statement because she thought the incident to be stupid. Ms. Murphy's opinion of the stupidity of the incident is hardly a person who was being threaten[ed] and needed to be defended. This evidence does not support the giving of a justifiable use of force of another [sic] instruction.

> Additionally, the Court finds that the Defendant has failed to establish that he was prejudiced by the actions of his attorney. In demonstrating prejudice, the defendant must show a reasonable probability that "but for counsel's errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 694 . . . . "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. Based upon the testimony of the victim, the testimony of Ms. Murphy and the evidence collected by the police, this Court does not believe [sic] and therefore find that the result of the proceeding would not have been different.

<u>Id</u>. at 160-61.

On appeal, the First DCA affirmed the case per curiam without a written

opinion. Ex. C5; <u>Harrison v. State</u>, 300 So. 3d 136 (Fla. 1st DCA 2021)

(table).  This adjudication on the merits is entitled to AEDPA deference under

28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.

*See* Richter, 562 U.S. at 99; Wright, 278 F.3d at 1254-55.  A review of the

record supports the state courts' determination, as reflected by the citations

in brackets within the quoted material above.  *See* Wilson, 138 S. Ct. at 1192.

To the extent this ground asserts trial counsel provided ineffective

assistance by not arguing for JOA on the basis that "the Stated failed to

repute Defendants theory of justifiable use of force having presented a valid

basis for engaging the victim with a pipe," such argument lacks merit.  As set

forth in greater detail in the analysis of Ground 1, *supra*, the victim testified

that he had previously told Harrison he was not welcome at his house, he

asked Harrison to leave, Harrison retrieved a pipe from the victim's yard and

entered his home without his permission, "forc[ing] himself into the living

room, with the iron pipe in his hand" and began swinging the pipe at him.  Ex.

B6 at 41-42.  The victim and Officer Reis testified regarding the injury to the

victim's hand as well as damage to his phone, ashtray, and door.  *Id*. at 43-

45 (Paul Brown), 63-70 (Officer Reis).  If defense counsel had presented the

JOA motion as urged by Harrison, the trial court would have denied it

because the State had presented sufficient evidence to support the charges

of (1) burglary of a dwelling with person assaulted, in violation of section

810.02(2)(a), Florida Statutes; (2) aggravated battery with a deadly weapon (pipe), in violation of sections 784.045(1)(a)2., Florida Statutes; and (3) criminal mischief, causing damages of $200 or less, in violation of sections 806.13(1)(b)1., Florida Statutes.  *See* Ex. B6 at 127-50 (jury instructions, which included self-defense).

To the extent this ground asserts counsel performed deficiently by not presenting a "viable self-defense defense," such argument also lacks merit. As set forth above, the defense witness, Cassandra Brown Murphy, did not testify that the victim had threatened her and, further, she testified that Harrison did not enter the victim's house.  *See* Ex. B6 at 101-03.  Murphy testified that Harrison remained on the front porch and she "might have saw [the victim] had the stick just jerking."  Ex. B6 at 100.  On cross, she testified the confrontation between the victim and Harrison was "just stupid."  *Id*. at 106, 109-10.  As the state court found, "Ms. Murphy's opinion of the stupidity of the incident is hardly a person who was being threaten[ed] and needed to be defended" and, further, "[t]his evidence does not support the giving of a justifiable use of force of another [sic] instruction."  Ex. C1 at 160.  The court did not unreasonably conclude that "[b]ased upon the testimony of the victim, the testimony of Ms. Murphy and the evidence collected by the police, . . . the result of the proceeding would not have been different."  *Id*. at 161.

Petitioner Harrison has not shown that the state courts' rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### <u>Ground 5</u>: IAC – Cumulative Error

In his fifth ground, Petitioner Harrison asserts that "[t]rial counsel[']s multiple as argued above when considered cumulatively effectively den[ied] Defendant his right to a fair trial and effective assistance of counsel." ECF No. 1 at 14. Respondent acknowledges that Harrison raised this claim in the fifth ground (Ground 1E) of his pro se Rule 3.850 motion. Ex. C1 at 15; *see* ECF No. 12 at 13. Similar to Grounds 1, 2, and 3, *supra*, Respondent asserts that Harrison did not introduce any evidence in support of the claim at the evidentiary hearing, "let alone fairly present the postconviction court [or the First DCA] with any federal constitutional grounds in support of his claim." ECF No. 12 at 13. Respondent asserts that because he thus abandoned this claim, it is unexhausted and procedurally defaulted. *Id*. at 13-14.

As with Grounds 1, 2, and 3, *supra*, the record supports the factual findings made by the post-conviction court, affirmed on appeal, regarding the withdrawal of all but one of the IAC claims. Even if this ground was not procedurally defaulted or abandoned, he has not shown entitlement to relief.

Indeed, the Eleventh Circuit has rejected an argument of cumulative error in the context of IAC claims.  Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009) (explaining that "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" and "the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt'" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))).  Moreover, because each individual ground fails, this ground likewise fails and should be denied.  *See, e.g.*, Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative trial court error as "none of Morris's individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"); *accord, e.g.*, United States v. Chalker, 966 F.3d 1177, 1193-94 (11th Cir. 2020).

## Conclusion

Petitioner Harrison is not entitled to federal habeas relief.  It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument regarding a certificate by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

**<u>Recommendation</u>**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 28, 2022.

**S/  Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**